Good morning, Your Honors. May it please the Court, I'm Lisa Counters and I'm here representing Nancy Pannebecker. My partner Kevin Kebel is at counsel table with me. Despite two bench trials and two separate administrative appeals, Nancy Pannebecker never received a full and fair review of her claim for disability benefits. There was never a time during the consideration of her claim that the right policy language was applied to the complete administrative record. The first error of the district court that concerns us the most is the fact that as a matter of law, the district court erred with respect to two issues when he considered what to factor into the definition of disability. As your honors are aware, the definition of disability in this policy requires a claimant after a period of time to be unable to perform the substantial and material duties of her own occupation or any physical and mental capacity. The court, we urge the trial court to import into that definition a remuneration requirement. The court refused. And the court refused on its interpretation of this court's decision in Madden. And that seems to be legal error given the definition. Ms. Pannebecker, there's no dispute in the factual record that Ms. Pannebecker was $75 a month in 1996, which works out to be about $105,000. What was she getting on the long-term disability? The total benefits available to her were, I believe, $5,200 and change with the subtraction per month. With the social security offset, it came down to about $3,500. But it would have been considerably, as I understand it, above what the testimony as to other professions. Oh, no question. $20,000 or $21,000. So am I correct on that? Yeah, you're absolutely correct, Your Honor. And that's an important fact, because if the policy I like it when I get important ones. If the policy only provides just, you know, if you can't do anything, it's nothing more than the guarantee that social security disability provides. And by the nature of the policy, it has to provide more than that. It considers a social The remuneration requirement is not written directly into the definition of disability. You can look to other areas of the policy that suggest that it has importance. On the rehabilitative employment provisions of the policy, for example, Ms. Pannebecker could earn 20% of her predisability earnings and still receive 100% of the benefits owed to her by Liberty. So that 20% benchmark seems important, and the jobs that they provided were barely above that benchmark. If those were jobs she could do that she was qualified for by training, education, and experience, then she would have not retained 100% of her benefits, but under the rehabilitation employment definition, she would have retained almost all of her benefits, until such time as her benefits reached 100% of what she was earning predisability. I think that the court, that this case provides this court with an opportunity to clarify the Madden decision. The notion in Madden, when this court rejected the Helms definition out of the 11th circuit, concluded that, first of all, the Madden policy didn't reference training, education, and experience. It only referenced one's ability to earn a living. So it's different than this policy. But this court concluded that Helms is more favorable to the claimant, or that Madden, incorporating training, education, and experience, is more favorable to the claimant than the Helms decision. Well, that's definitely true, but it seemed to me what I thought we were saying in Madden, and of course we'll go back and see how it fits into your case, is that obviously once you take into account certain things like training, experience, education, and that sort of thing, that there might be, when you take that into account, you know, there might be people suitable for that, but that there's more jobs that fill the bill if you just take into account just, you know, suitable income. And they're making a comparison in terms of available jobs, not a threshold income limitation, as I read it. And so it just seemed to me that you've got to go back to the policy language. Correct. But the policy language is exactly what Madden talked about, made it more, was more favorable to the claimant. So you have to make it more favorable, but it doesn't impose this threshold that you're arguing. I don't think it necessarily imposes a threshold income, and I don't think we're arguing, I mean, there's no question that the jobs that Liberty Mutual found weren't anywhere near the threshold, weren't anywhere near. So I don't think we're asking that the court impose the threshold. So to be specific, what specifically would you ask us to determine was an error, and what would be, as you would write it, the reason for that? With respect to this particular issue, I think as a matter of law, failing to incorporate remuneration in the sense that it requires a remuneration was error by the district court. The vocational evaluations, the initial vocational evaluation done by Liberty Mutual, doesn't connect any of her training, education, and experience to any of the jobs that were available. In fact, Ms. Kurth concedes in her own report that these are entry-level positions. And so Ms. Pannebecker managed to do that. In addition to keeping in everything else, as I recall, she was trying to say that at certain times she really was disabled. But given her condition as well, that these may have been appropriate, she may not have been able to do the job she was before, and this would be appropriate given training and experience that she was qualified for those jobs, and they were of the sort that would be consistent with her condition that she was still complaining of. Well, Your Honor, any of those jobs would have been appropriate for basically anyone because they didn't require any training. I understand that, but the question whether the more stressful or more difficult jobs that she was qualified for or had been doing, whether she could still do that given what her claim for disability was. Right. And one of the problems is that the unpredictability of her uncontrollable angina, fatigue, and the fact that she was able to do those jobs was not reasonable. Ms. Kersh suggests that they were low-skill, low-stress, and I don't think the court adopted that view. And I don't think that in common-sense purposes it's reasonable to conclude that low-skill is consistent with low-stress. The examples of the jobs that were provided ---- Let me be clear what your answer was. So you're saying not that these jobs were unsuitable if we consider a threshold income, but they were unsuitable given her condition, so there was no job that was suitable. I think that's correct. I think both, Your Honor, in the sense that training education and experience means that you have to consider the notion that you can go from being an attorney to doing ---- flipping burgers at McDonald's because you're qualified and capable of doing that. I think training education and experience requires more. Not a threshold income level, but certainly a threshold experience. And there was no ---- Okay, so now this is just a little bit different. So now you're suggesting that it's a threshold skill level. I'm just trying to get down the arguments. A threshold skill level? I think that training education and experience doesn't import a flat financial test, but it does import that it requires to actually be doing something consistent with it. Well, let's suppose you found one of these jobs, let's say hypothetically, that were recommended that actually paid pretty close to what she was making before. Are you saying it still would not qualify because it doesn't relate to her skill training and experience, even though the compensation would have been comparable? Well, she doesn't ---- No, I don't think that's the case, Your Honor. Back to compensation, are we? Well, no, I think it's sort of a fallacy to start out by saying that being a receptionist or customer service representative could approach an income level. What is more ---- I understand that. I'm trying to also understand what you're arguing. And what I'm trying to get is, as was just referenced, the difference between a skill set and a compensation level. So if one of those skills that was identified would be considered lower on the compensation level was at or near what she was making before in her higher skill set position, you would still say that is not a qualifying occupation. Is that correct? Do I understand you're saying that if there was a skill that she minimally could do that? Let's suppose one of the proposed skills, let's say it was just office reception, let's suppose she found someplace that would pay her at the same level she was making when she was working before she was disabled. Are you saying that she would not have to accept that position or that that would not be a relevant position because it didn't have the same skill set that she used before her disability? Or are you saying since the compensation level is the same, that she would then be ---- that would be an appropriate job for her to be in? I'm not sure I can answer your question clearly, because I think that if the compensation, perhaps the best way to look at it, I think that provides a little more explanation, is the way that Liberty Mutual considers it. We introduced at the trial court level the PP&E that describes how Liberty should set out to do an own occupation evaluation. And it talks about factoring in the training, education and experience, and can this person earn at or above. I think if she found a receptionist position and that met her skill set and the compensation was similar, I think ---- The middle part of that. What did you say about the skill set? If her skill set qualified her to be a receptionist and she would earn around her something more than $20,000 a year, something sort of approaching at least what she was making on disability, then I think Liberty might have a better argument. I don't know if it's ---- I don't think you can say that it's one thing or the other, because the training ---- I guess what I'm trying to focus on is that training, education and experience in some sense. So you're saying the jobs that were proposed were both below her skill set and below a threshold compensation level? I'm not sure I'm saying they were below her skill set. What I'm saying is that they were entry-level jobs by Liberty's expert's own concession, and the only transferable skill that Liberty's expert identified that applied to these jobs was that she could learn new things. And the definition of disability in this policy isn't provide for ---- doesn't say that she has to be trained to do a new job. It says that she's qualified for or becomes qualified for, not that she can become qualified for. Counsel, I've got a question for you. Yes, sir. Is the question on the plan whether she's reasonably fitted for the other jobs? Is she reasonably fitted in that way? It's reasonably fitted by ---- modified by the six other requirements, yes. By A, B, C, D, E. So then when we look at the jobs, we say is she reasonably fitted for it? And in my mind, the question was whether reasonably fitted for these, in light of those factors, whether that includes a compensation element. And I think that this court's decision in Madden says it without saying it directly, that if the compensation ---- I guess it goes back to the purpose of the policy. If she ---- all she was getting was in being insured against the opportunity to do anything with no compensation consideration, the policy was illusory. There was nothing she or the employer got by her having that coverage. It seems unreasonable that someone with her extensive skill set, you know, would have to, A, didn't have ---- She didn't get anything. I mean, there are different kind of disability policies. Correct. Let's take doctors, for example. They're the ones that they get the best. So basically they have ---- some of them have policies, and if I'm a doctor and I have a problem and I can't do hand surgery, but actually I could do amazing research, I could do office practice, et cetera, some of the medical policies by language say I still get complete disability because I can't do hand surgery. Yes, because it's own occupation by specialty. Yes. She doesn't have that kind of policy. So I'm not sure why you say it's illusory, because she has a different kind of policy, which is she doesn't have to do hand surgery or any other occupation. So that's kind of, it seems to me that word needs to be read in conjunction with reasonably fitted. I agree. So then I guess you're trying, just so I understand, you're trying to say, well, to read those together, you still have to import some status, if you support that requirement, that there has to be some, in any occupation policy, there has to be some consideration of station in life. Those any occupation policies, even if you go to read Couch on Insurance, talk about the fact that there has to be some consideration of that. But even if you don't want to reach the issue of setting a financial threshold, I think you still have to go back to whether her training, education and experience qualifies her for the positions. And I think that's part of Ms. Pannebecker's expert's report on grounds that she didn't do the right analysis. And that's particularly important, Your Honors, because with this court's decision recently in SAFON, the court concluded that she had to be told what was the basis of their decision. And the second, after the remand, when Pannebecker got to appeal, there was never a letter from Liberty identifying what they relied on and what information she could provide that would establish that there was no basis of their decision. That their decision was incorrect. So she provides a report going through the jobs that they identified and saying those aren't consistent with their training, education and experience. And then we finally find out at the end, before we have no opportunity to address that, that that wasn't what they were looking for. And I think that conflicts directly with this court's decision in SAFON. But I just ask you, I know you want to save some time for rebuttal. But I'm interested in the retroactive benefits as sort of a separate issue as well. And I'm wondering, on that point, if what the argument is with respect to whether Liberty met the criteria of the policy in making that decision, which I think was in 2000, is that correct? Correct. And the district court concluded that it did not. First thing the district court found when it was engaging in what now appears to be the improper analysis on conflict, but the first thing the district court found was that the requirement that the requirement with respect to the remand, that the trial court or that the administrator never considered the subjective evidence. And the trial court found that was the case. So they imported the wrong definition of disability. And the second thing the trial court found is that although he concluded there might be ample evidence that she could do sedentary work, the court found that they didn't apply the policy definition to her ability to do sedentary work. And I think this court's decision in Gross-Solomon talks about the fact that if they've had the opportunity to do it and they don't, that it's not a remand, it's bring her up to speed on benefits, and then you can go back and make the decision. And also one other question, though, here, is we've now had this evolution of our standards for how we review these various cases. But this judge reviewed everything de novo, is that correct? Yes. He did. So it doesn't really matter whether or not there's conflict or no conflict or whether it was discretionary. If the judge thought everything was on the table, it wouldn't cure any kind of standard of review issue, wouldn't it? Right. I don't think he necessarily applied the incorrect standard of review, obviously. But what's concerning is that there are guidance that this court has given in subsequent opinions, including Abatey, that talk about what he should, you know, what should factor in. And those are things he flat-out rejected. He said, you know, if she could do sedentary work by liberty, he still reached the conclusion that she could do sedentary work. And he found that was improper, that that's all they considered, and there's no evidence in the record that they ever considered subjective symptoms. In fact, Tim Dumont, the claims examiner, says, you know, your disability is all subjective. Do you want to save the remainder? I do. Thank you. Good morning. Thank you. This is Mike Hensley on behalf of Liberty Life Insurance Company. The court at the very end asked a question I think is very important here. This court at two bench trials did, in fact, apply the de novo standard of review in this ARISA disability case. All of the issues we hear being raised by Pennebecker's counsel in the briefs and today essentially would ask that this court make different findings of fact. And because this court below reviewed it under de novo standard of review, then the standard of review by this court as to those fact findings is by a clearly erroneous standard. Even if this court were to look at the record itself, want to weigh that evidence differently and come up with a different decision, you can't do so because this was reviewed by the de novo standard. We cited the court to silver versus executive car. If we were to conclude that in that review the court applied an incorrect standard, that we would review de novo, would we not? Yes. So isn't that what's being argued, that the court applied an incorrect standard either or both with respect to essentially station in life and or compensation under the definition of the plan here and that we can review? Well, I think there's a question of what you mean, Your Honor, by standard of review. The most scrutiny standard of review that can be applied was applied in this case. No, you seem to be suggesting we have to give deference here because the trial court reviewed it de novo and I guess what I'm saying is the argument here is that in making that review, the trial court, at least the argument being made, is that the trial court applied the wrong standard and that we would review de novo. I guess we're missing words a little bit because it's not the deference, it's the clearly erroneous standard that applies. And the question is for this court is in the record, looking at the record, is the evidence there that supports the court's decision, whether you would have made a different decision or not. I don't think I hear counsel saying that the court should have given less deference either below or not. I think she said, of course we can let her speak for herself, but what I think she was saying that, you know, this overall standard is not really up for grabs here because of the de novo, however, that there's some texture given to how we apply whether discretionary or de novo in the Abadi case and that there are some sort of underlying principles in there that might not have been applied by this court, whether de novo or abuse of discretion, and that we ought to see if the court was off on how it viewed some of the factors. That would be more of a legal issue, I guess. Well, I guess I would disagree that it's a legal issue because all of the arguments that she makes are facts that were in the record that were evaluated, and the court came down one way on those facts. Unfortunately, not the way Ms. Pannenbecker would like them. I think that's different. And the other issue is with Abadi, I mean, we're not talking about is it a different level of abuse of discretion or discretionary review that should happen. This is de novo. This is the furthest and most scrutiny view that can be given by the court below, and because of that, this court's review is whether those findings of fact were clearly erroneous or not. And we believe on this record the findings were not clearly erroneous and were supported by the record. Well, are you suggesting that either Liberty or the district court sussed in terms of the definition of abuse of discretion? I mean, the district court, in its definition in the policy, considered whether the jobs that were proposed met a threshold compensation standard. Admittedly, they did not. Well, if that is incorrect, I'm not talking about the review by the district court as to whether it was de novo or not. I'm talking about our review of what the district court did. If we were to conclude and say, well, we're going to resolve some of the conflicts that exist, and say this definition per se includes some consideration, well, that's not true. If we were to conclude that that definition of compensation, along with all of the other factors, that would be essentially a decision that we could make on the law and not on the facts, correct? I would disagree with that, Your Honor, and the reason is that essentially what happened was the court was given a definition of disability in a contract, if you will, and was asked based on the facts in that language to interpret that. And it's our view that that really is a fact-finding analysis. If we might conclude that the compensation level should not be considered, and I'm assuming that that is your position, what I'm saying is our review would be non-deferential if we concluded the wrong standard was applied, that there should have been in the definition that that would imply some consideration of a compensation level, then that we could do without deference to what happened below, correct? Well, I would disagree, because what that would have you do then is make different findings of fact as to what the language of the policy said. No, the definition of the policy is a legal issue. There's no facts here in terms of the negotiation of the policy. We've got the language, we can interpret it, and that interpretation is a matter for the court, correct? Correct, Your Honor. And then let's go with that, because I think the court asked a very good question, which is what kind of policy do we have here? This is a group disability policy, it is not an income replacement policy, which can be purchased. It is not the individual type disability policy, which also means, always means usually your own occupation and might have a financial component to it. This is a group policy that essentially paid, you know, 60% or so, 55% or so at its best of her replacement salary. And the, after the 18 months, in this case, some cases it's 24 months, it shifts to this any occupation, and so there's still a disability benefit available, but it is at a different level. In this policy there is no language that inserts, as the court found below, a remuneration component to it. If you decide to do that, there's a whole other panoply of issues that comes up, which I'm not sure how we resolve those, which is what is the definition that we're testing against, how much, how do we do it, was even the full disability benefit, since it only paid 55 or 60% of her salary, not replacement income. I mean, there's all kinds of issues that open up if you take that. Well, you can argue about how do you figure that out, and that's always the argument when some new definition is going to be proposed, but I'm assuming that can be worked out. But it seems to me, yes, I mean, we have, on the one hand, the professional policies, where it's a replacement of income, if you will. But doesn't someone, let's assume that the positions that Liberty came up with as possible for the, Ms. Pennybecker paid 10,000 a year, considerably below even what she would have had on disability, are you saying that the court, that Liberty and the district court could not consider that? As long as she was qualified to do it, and it paid $10,000 a year, then it cuts off her disability. To be extremely honest to the language of the policy, the answer to that is yes. There is no guarantee of a floor. Now, we don't have to deal with that in this case, because... As a group policyholder who didn't negotiate the policy, expect that there's going to be some more protection than that, and doesn't that get to the sort of life possibilities in Madden? I mean, doesn't a policyholder expect that there's going to be something more than a, if you will, use a common expression, chump change, will void the policy when it's considerably less than even what she would have had under the disability policy? I agree with that, and I think where that's dealt with, though, is by the qualification that the job has to be something they're qualified to do, as opposed to just go find anything off the street that's a minimum wage job and say, because you can do it, there you go. And I think there's a fundamental... If they're reasonably fitted, counsel, if they're reasonably fitted for any entry-level job, then is that saying that there's no coverage on entry-level? I think, reading it directly, I think you're right, Your Honor. The issue, though... The job she wouldn't be qualified for is one where you go in, and you say, I'd like to apply for this job, and they say, you know what, you're too overqualified, we won't hire you, because we know you're not going to stick with us here, you know, as the receptionist, or the whatever the case may be. So I guess you're saying that really there's no, given this kind of an individual who has a fair amount of skills in education and intellectual development, there's no coverage on entry-level? Capability, there's really virtually no job, assuming it met her physical abilities, that she wouldn't be qualified for at an entry-level? I think that's right, but I think where we need to focus is Helms versus the Madden decision, because that's kind of a part of this. If you look at Madden's analysis of Helms, you know, the issue was where you've got Helms, it had a specific requirement of some substantial replacement income in the language. You didn't have that in Madden. But what the Madden court looked at wasn't that language so much as it was the language that says, rising to a substantial replacement income, and what the court said was, it's this likelihood that you might get there, is why we believe using the language of your training, education, and experience provides better protections to the individual than in Helms, because if you look at the Helms, you can't get there without a replacement income. So if you look at the Madden language specifically, they didn't have to be making that substantial reasonable income at the beginning. It was a job that would rise to that at some point, and it was this likelihood of maybe that was the distinction as to why the Madden court said, we think the definition of your education, training, and experience provides more protections than below. It didn't really deal with the remuneration issue as plaintiff, Ms. Pendebecker, would ask this court to look at. And that's the question. Should the court now look at whether there's a remuneration issue? You're right. You do have the policies that specifically set out you'll get your replacement income. But what about people who didn't negotiate the policy, who come in, they look at a policy that says, based on your training and experience, et cetera, and they expect they are now protected if they're disabled. But what Liberty now says is, well, we're going to define the jobs as entry level, even though you were above that entry level, you can do this, and whatever the income is, no matter how low, even though it's a fraction of what you would have made on disability, that qualifies in your cutoff and good luck moving under a bridge. If you do that, the problem you have is you now have undermined the underwriting process of this policy to start with, which was based upon a particular type of definition. And if you do that, you're now saying that we haven't charged enough premium all those years to be able to do what the court now wants to do. Secondly, I think there are some natural protections out there, which is minimum wage laws, poverty level issues that underline what is going to happen here. And if you put the compensation in something greater than that, then the question is, what is that and where is it and how much premium do we have to charge? And it would really be changing the relationship of this policy, for which many years it has been underwritten, policies have been charged. I think counsel had sort of two different lines here. One was a remunerative issue and the other was a sort of station in life issue. Would you comment on that? I guess the response is, again, we're guided by the language of that definition. And it's, there is, and it says the most high paid job that you can get given your training, education, experience, physical, mental conditions, doesn't say that. It says a job. I would assume that an individual who truly doesn't want to stay on disability and wants to go out and work, when they get into that workforce, will do the best they can to rise to the level of the income and the jobs that they're qualified, given their conditions. But you're not giving her an entry level job. How is that consistent with her experience, her training, which was for a much higher position. I think she was paid over $100,000 before she was disabled. And I don't mean to go back to compensation, because I know you're on a different point. But it seems to me the training, education, experience would include, if you will, go back to that sort of station position and that someone in that position, given their druthers, certainly would say that this entry level position is a receptionist position. It's not consistent with training level and experience. First, I'm not sure the record said that every one of these positions were entry level. And they dealt with that really in the idea of stress, because you have to balance what you can do plus your condition. And that's where kind of the level of stress that comes in is important in what that job is. But I think the issue here is they did do a transferable skills analysis and say, okay, given all of these jobs you've had, what are the skills that you now have that we have to look for jobs, occupations for which you can perform? There isn't a requirement, as the McKinsey court and others held, to go find that specific job with that specific salary with those specific things to satisfy this requirement. And so we believe that Liberty did what this policy has it to do, and that based on the facts of this case, we're not dealing with those minimum jobs that are below minimum wage for her. Does this contract standard require anything more than the social security standard? Yes. It's different. The social security standard does have a, I'm sorry, it's a different standard. And that's why we look at, we can look at it, but it's not required to apply or just because someone qualifies for the social security standard, which is a lower standard, to determine whether they're qualified for benefits under this policy or not. Let me ask you about the retroactive benefits, because she got in the situation where they deny the retroactive benefits, they didn't really look at the right thing, and then they get another bite at the apple to go back and relook retroactively. If they hadn't, since it didn't have the right evidence and didn't make the right determination at the outset, it's kind of a but-for thing. She wouldn't have been terminated. At least she'd be clicking along until the next determination were made on her own. So why shouldn't she get those at a minimum, and I don't know about the rest, because that's another separate issue, but why shouldn't she at least get those benefits? Well, the argument really comes down to are we going to provide essentially a free benefit, if you will, to the plaintiff, because the court never decided in its first decision whether or not she was eligible for disability benefits or not. What it said was, and for one fact alone... At that point, you were paying her benefits up to the, she'd been being paid, she goes to this, benefits get cut off, it's determined later that it had to be sent back, and it had to be sent back because Liberty, in effect, did the wrong thing, so why shouldn't she at least, she would have been paid during that period. If you'd gotten it right the first time, yeah, then it would have been cut off there properly, but here you had to come back, add further proof, so why shouldn't she continue, she would have continued to get those benefits, at least through the end of the trial. Right. But what the court did was, it didn't say that it made the wrong decision, what it said was, I need a little more, it needed to apply the plan definition language as well to identify those occupations. Right, but see, that's kind of it, it's like, okay, should I cut off these benefits or not, that's what the insurance company is saying. Well, then the insurance company is supposed to go, like, to the plan, read the language and say, hmm, how does she benchmark against the plan? They didn't do that, so they cut her off basically without adherence to the plan language, and had they, had they adhered to the plan language, they may or may not have cut her off, who knows at that point, but since they cut her off without applying the plan language, why shouldn't she at least get those benefits, because she would have at least, she would have been keeping paid during that period until the court made a final decision. Right, and as the Quinn court, which plaintiff Pennebecker relies on a number of times, said, we're not going to reinstate, we're going to remand, because otherwise what we're doing is giving an economic windfall if ultimately the decision was right to terminate the benefits. And Mongaluzzo v. Baxter-Travano, Ninth Circuit Court, same thing, when it's required for the plan administrator to go apply the plan language properly, which is what this court said it wanted him to do, when it evaluated the jobs, that remand is not an option. Remand without reiterating benefits was the right thing to do, because what we don't want to do is, again, wrongfully pay benefits, which affects the plan and all the other beneficiaries under that plan, and give essentially an economic windfall. The fact is, plaintiff, other than saying there's some more that needs to be done, didn't prove that she was not disabled. And so the court found the appropriate remedy, supported by her own law, including Saffel v. Sierra Pacific, remand as opposed to reinstatement of benefits, is not an option. It's the appropriate way to go, so we don't give this economic windfall, and essentially give them a benefit that they haven't earned yet. Finally, Your Honor, there's an issue also kind of right along the lines that you've asked about the attorney's fees. There is a question of when it was remanded, why don't we pay the attorney's fees? And, again, the issue of awarding attorney's fees by a trial court is a discretionary issue, and the review of the court's decision is by an abuse of discretion standard. And in this case, we have a complete statement in the record as to why the court said, I'm not going to give fees yet. It did not abuse its discretion in doing so. There's no evidence of that. And it basically said that the plaintiff had yet to establish any substantial right yet, but that she can apply for those attorney's fees later if she ultimately wins and is determined to be disabled under the plan, which, of course, as we know, didn't happen in this case after two bench trials. So we believe the court's decision, as well, to remand and not give benefits, but also to not award attorney's fees was appropriate. Thank you. Your Honor, let me first address the issue of fees. Liberty encourages you to approach it from an abuse of discretion standard, but under 29 U.S.C. 1132G, it says that the attorney's fees are not subject to remand. It says that a successful party in an ERISA matter is entitled to fees, unless it's unjust. So the only question for the court to consider was whether Pannebecker was the successful party by getting the remand. And I think this court's opinions are very clear that she was the successful party. It only means that she had to obtain a judicially sanctioned material change in the legal relationship. She established that Liberty didn't consider the whole of the evidence when they made their decision, and she established that... What is your best case for a remand that ultimately results in a denial of benefits is also a successful position for attorney's fees? I think that this court has ruled on a number of occasions that even if once a case has been remanded to an administrative agency, it considers it like that. Even if the case was ultimately dismissed, this court determined that fees weren't an appropriate award. And that case is cited in the brief. I can't remember it off the top of my head. But it doesn't matter what happens when it goes back. Was she able to prove successfully that there was a material change in the relationship? And there was, because she got sent back for the administrative appeal process. Your Honor, lastly, I just want to say that you don't even have to reach the monetary issue. Because if you look at what Liberty's own guidelines were, and the court rejected them because he said they didn't apply them in this case, but if you look at the regulations, it doesn't matter whether they're applied. If there are guidelines that exist and the company does not apply them, as Anne Berry clearly testifies, she says, well, if I look at them and maybe I do and maybe I don't, but if you look at that in the record, it's clear that reasonable compensation is an element that they should have considered. Thank you. Thank you. Thank you both for your argument. It's some new and interesting and novel issues in light of Madden. The case just argued, Kannebecker v. Liberty Life is submitted. We have one last case for argument. If I could have a break before that so that this will give you a chance to get set up. The last case for argument this morning is United States v. Satterley. So if counsel can get organized with that, we'll take a brief recess.
judges: McKeown, Gould, Schiavelli